UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEVIN SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:21-cv-00373-JMS-MG |
| | ) |
| PRICE, | ) |
| RYLEDGE, | ) |
| LAMB, | ) |
| | ) |
| Defendants. | ) |

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ON EXHAUSTION AND DIRECTING FURTHER PROCEEDINGS**

Plaintiff Kevin Smith, an Indiana Department of Correction (IDOC) inmate currently located at Miami Correctional Facility, filed this civil rights action pursuant to 42 U.S.C. § 1983 based on allegations that occurred between March and July 2019, while he was housed at Wabash Valley Correctional Facility (Wabash Valley). Dkt. 21.

The defendants now seek summary judgment on the basis that Mr. Smith failed to first exhaust his administrative remedies before bringing this lawsuit as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). For the reasons explained below, the defendants' motion for summary judgment, dkt. [49], is **DENIED.**

**I. Background**

In March 2019, Mr. Smith underwent surgical repair of his right elbow and received an implanted External Fixator System in his arm that later came apart at Wabash Valley. Dkt. 1; dkt. 21 (Court's screening order). Mr. Smith was transported back to the outside hospital on two occasions in June 2019 to receive further treatment related to his arm. Dkt. 21 at 3.

Mr. Smith alleges that he was transported to the hospital by Officer Price on June 13, 2019. *Id.* at 4. Officer Price indicated that Mr. Smith was a known "grievance filer" and told Mr. Smith to watch out. *Id.* During the transport from the hospital back to the prison, Mr. Smith alleges he was not allowed a seatbelt, and when the driver slammed on the brakes, he fell forward and broke his clavicle. *Id.* When the van stopped, he was pulled out by the belly chain causing further pain *Id.*

Mr. Smith alleges he was transported to the hospital again on June 20, 2019, by Officers Ryledge and Lamb. *Id.* This time, the External Fixator System was removed, and Mr. Smith was nauseous after the procedure. *Id.* He alleges that he was forced into the back of the van, that the driver sped down the wrong side of the interstate and hit multiple bumps, that his request for air conditioning was denied, that he was left in the hot van, that he was denied food that had been allotted for the trip, and that he was in extreme pain due to these conditions of his transport. *Id.* at 4-5. Before this second transport, Mr. Smith alleges he filed an emergency grievance about his concerns for the trip and further retaliation, but that his grievance was denied. *Id.* at 5.

Mr. Smith's Eighth Amendment claims proceed against defendants Officers Price, Ryledge, and Lamb, related to their conduct during Mr. Smith's transports between Wabash Valley and an outside hospital for medical treatment. *Id.* His First Amendment claims proceed against the defendants based upon his allegations that they retaliated against him during the vehicle transports due to prior filing of grievances against Wabash Valley facility and staff. *Id.*

## II. Legal Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The Court views the facts in the light most favorable to the non-moving party, and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

### III. Facts

The following statement of facts was evaluated pursuant to the standard set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to the non-moving party. *See Reaves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

**A. Offender Grievance Process**

At all times relevant to the allegations, Mr. Smith was incarcerated at Wabash Valley, an IDOC facility. Dkt. 1; dkt. 49-5 (Offender Location History). During the process of exhausting his administrative remedies Mr. Smith was transferred to New Castle Correctional Facility (New Castle), another IDOC facility. IDOC Policy and Administrative Procedure 00-02-301 (Offender Grievance Process) is the applicable administrative policy and procedure for the relevant time. Dkt. 49-2 (effective Oct. 1, 2017).

The Offender Grievance Process sets forth the steps through which offenders committed to the IDOC "may resolve concerns and complaints relating to their conditions of confinement." *Id.* at 1. This policy is the only grievance process recognized by the IDOC. Dkt. 49-1, ¶ 9 (Winningham Affidavit). The Offender Grievance Process consists of three steps that inmates must take to exhaust their administrative remedies after first attempting to resolve the issue informally.

3

*Id.*, ¶ 10. "[T]he offender must timely complete each step of the Offender Grievance Process. This includes using the correct grievance forms and timely filing each grievance within the timeframe outlined in the Offender Grievance Process." *Id.*, ¶ 11.

First, "an offender wanting to submit a grievance on an issue that he . . . has been unable to resolve informally . . . shall submit a completed State Form 45471, 'Offender Grievance,' no later than ten (10) business days from the date of the incident giving rise to the complaint or concern to the Offender Grievance Specialist." Dkt. 49-2 at 9. Then, the "Grievance Specialist must either return an unacceptable form or provide a receipt for an accepted from." *Id.* If the offender does not receive a receipt or a rejection of his submission within five business days, "the offender shall notify the Offender Grievance Specialist of that fact (retaining a copy of the notice)," and the matter shall be investigated with a response due to the offender within five business days. *Id.* The Grievance Specialist screens the submitted grievance within five business days of receipt and "shall either accept it and log it, or reject it. A logged or rejected grievance is entered into the computer system and is visible on the offender's history of grievances." Dkt. 49-1, ¶ 16. If the issue is not an emergency grievance, the Grievance Specialist is allotted fifteen business days from the date the grievance is received, "to complete an investigation and provide a response to the offender[.]" Dkt. 49-2 at 10.

Second, if the formal grievance is not resolved to the inmate's satisfaction or if the offender receives no response within twenty days of being investigated by the Grievance Specialist, the offender may file a completed State Form 45473 Level 1 "Grievance Appeal." *Id.* at 12. A Level 1 grievance appeal must be submitted to the Grievance Specialist within five business days after the date of the grievance response (or if the offender does not receive a response to the grievance within the applicable timeframe, it may be appealed as if it had been denied). *Id.* "Submission of

State Form 45473 serves as notice that the offender wants to appeal to the Warden/designee." Dkt. 49-1, ¶ 20. The "Grievance Specialist must log the date he/she received the appeal, forward the appeal to the office of the Warden, and generate a receipt for the appeal." *Id.* "Once the appeal response is received from the office of the Warden, the Offender Grievance Specialist shall provide the offender a copy of the appeal response within one (1) business day." Dkt. 49-2 at 12. If the offender is dissatisfied with the Warden's response or receives no response within the relevant time, he "may appeal to the Department Offender Grievance Manager." *Id.*

The final step requires that an offender wishing to appeal the Warden's appeal response to "check the 'Disagree box, sign, and submit the completed State Form 45473, 'Offender Grievance Appeal,' and any additional pertinent documentation to the Offender Grievance Specialist within five (5) business days of receipt of the Warden's . . . appeal response." *Id.* This is a Level 2 grievance appeal. *Id.* The Grievance Specialist "shall scan and enter the completed State Form 45473 and any additional pertinent documents" into the grievance database within 2 business days for review by the Department Offender Grievance Manager. *Id.* The Department Offender Grievance Manager's decision is final. *Id.* at 13.

Offenders are informed of the Grievance Process during Offender Admission and Orientation. Dkt. 49-1, ¶ 25. Staff ensure that offenders are notified of the Grievance Process and are aware of how to obtain copies of the process. Dkt. 49-2 at 7. Prisoners have access to the Department's Offender Handbook, which includes a section on the Grievance Process. *Id.* Copies of the Grievance Process are also available in the law library. Dkt. 49-1, ¶ 26.

"If a grievance was initiated prior to the offender's transfer or release, the offender may exhaust the administrative remedies available through the grievances process at the former facility." Dkt. 49-2 at 14.[1]

### B. Mr. Smith's Use of the Offender Grievance Process

"IDOC keeps records on every **accepted**[2] formal grievance and formal appeal filed by an offender" Dkt. 49-1, ¶ 29 (emphasis supplied). The record contains Mr. Smith's grievance history and related grievances, which indicate that Mr. Smith submitted fifteen grievances between the date of the first vehicle transport, June 13, 2019, and the filing of this lawsuit on February 17, 2021. *Id.*, ¶ 30; dkt. 49-3 (Smith's grievance history). It is undisputed that Mr. Smith was transferred to New Castle on July 23, 2019, after the events alleged in his complaint occurred and before he filed this action. Dkt. 49-5.

Only one of Mr. Smith's fifteen accepted formal grievances is related to vehicle transportation on June 13, 2019. Dkt. 49-3 at 8 (grievance 108050)[3]; dkt. 49-4. The defendants'

---

[1] The Court notes that in setting forth the policy it is not finding that the policy was actually followed in this case, as will be explained below.

[2] The term "accepted" is significant, for if an IDOC employee deems the inmate's submission as non-compliant with policy they might return or reject the grievance. This practice often thwarts an offender's efforts to grieve, and the evidence submitted by Mr. Smith supports a reasonable inference that Wabash Valley employees used the return/rejection process to delay and interfere with Mr. Smith's attempts to avail himself of the grievance process.

[3] Mr. Smith's grievance 108050 states: "On 6/13/19, Mr. Smith suffered traumatic injury to his head, right shoulder, and right side of his upper body and possibly broken ribs. This was caused by an auto accident while being transported in an IDOC high security van. Mr. Smith was not transported per IDOC policy and should never have been in a van. Mr. Smith was placed in Ad. Seg while under medical care for surgery. When the accident happened Smith had no way to stop himself from obtaining injury and was not secure where he was placed in that van had Mr. Smith been in the proper medical unit van than Mr. Smith could have braced himself when the officer slammed on the brakes at 15-20 mph. Officers did not call police or file a police report when Mr. Smith was injured in a vehicle while on state road." Dkt. 49-4 at 5, 7 (cleaned up). This grievance, written on June 30, 2019, after both vehicle transports had occurred, only addressed the first transport.

review of Mr. Smith's grievance records indicates that he did not submit any accepted formal grievances related to the June 20, 2019 vehicle transport. Dkt. 49-1, ¶ 32.

### 1. Vehicle Transport on June 13, 2019

Mr. Smith first attempted to informally resolve his issue related to the June 13, 2019 vehicle transport on June 24, 2019. *See* dkt. 49-4 at 8 (Informal Request for Interview form). Mr. Smith received a response to his informal attempt, and then filed a formal grievance on June 30, 2019, which was received on July 3, 2019 and logged as 108050. *Id.* at 6-7. Mr. Smith's grievance was denied on July 26, 2019, after he had been transferred to New Castle three days before. *Id.* at 5. The Grievance Specialist provided Mr. Smith with a copy of the grievance denial, and Mr. Smith signed it on August 1, 2019 and indicated he disagreed with the response. *Id.* at 4. Mr. Smith requested that an appeal form be sent to him. *Id.* An appeal form was sent to Mr. Smith four days later, and he successfully completed his Level 1 appeal, which was received on August 15, 2019. *Id.* at 1.[4]

The Warden responded by denying the Level 1 appeal on September 12, 2019. *Id.* The next day, the secretary in administration at Wabash Valley emailed the Grievance Specialist at New Castle, in relevant part: "Please find attached offender Kevin Smith DOC 160176, Grievance Appeal Facility Level Response Case 108050 who is at your facility. Please make sure he gets a copy." *Id.* at 2 (email to Winningham). It is undisputed that Mr. Smith did not file a Level 2 appeal, rather, he argues that this process was unavailable to him because he never received the documentation from his Level 1 appeal at New Castle. *See* dkt. 59.

---

[4] The Level 1 appeal was not logged on Mr. Smith's history of grievances for grievance 108050, though it is undisputed that he completed one. *See* dkt. 49-3 at 8 (history only lists formal grievance)

### 2. Vehicle Transport on June 20, 2019

Mr. Smith submitted an informal request to resolve his issue related to the second vehicle transport on June 24, 2019. *See* dkt. 49-4 at 9 (Informal Request for Interview form). The request for interview form indicates that Mr. Smith received a response to this informal attempt. *Id.* Beyond this, the defendants have no record of any formal grievance or formal appeals about this second vehicle transport. Dkt. 49-1, ¶ 32. Mr. Smith disputes that he failed to file a formal grievance related to this issue and/or argues that the process was unavailable to him. *See* dkt. 59.

### IV. Discussion

The defendants seek summary judgment arguing that Mr. Smith failed to exhaust his available administrative remedies, before filing this lawsuit as required by the PLRA. Specifically, they argue that Mr. Smith did not file a Level 2 appeal about the first transport incident and that he did not take any formal steps to grieve the second transport incident. Dkt. 50 at 1-9.  Mr. Smith filed a 63-page response in opposition, along with 113 pages of attached exhibits. Dkt. 59; dkt. 59-2.[5] The defendants filed a reply, and Mr. Smith filed a surreply. Dkt. 66; dkt. 70. This matter is now fully briefed and ripe for the Court's resolution.

### A. PLRA Requirements

On a motion for summary judgment, "[t]he applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Sys., Inc.,* 98 F.3d 262, 265

---

[5] Mr. Smith's filings are replete with unrelated grievances against different defendants regarding different issues that pre or post-date the issues in June 2019 that are relevant to this action. Moreover, Mr. Smith's arguments are convoluted and hard to follow to the extent they muddle unrelated issues with the issues at hand here—whether he exhausted his administrative remedies about the two vehicle transports alleged in his complaint. The Court's analysis focuses only on the arguments and documents that are relevant to this action. The Court cautions Mr. Smith from this kind of scattershot filing practice in the future. Moreover, the Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3).

(7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The substantive law applicable to this motion for summary judgment is the Prison Litigation Reform Act (PLRA), which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

As the movant, the defendants bear the burden of establishing that the administrative remedies upon which they rely were available to Mr. Smith. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance

9

procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

### B. Vehicle Transport on June 13, 2019

It is undisputed that Mr. Smith completed the first two steps in the Offender Grievance Process as it relates to his first vehicle transport. *See generally* dkt. 49-1. Mr. Smith argues that if he had received the Warden's denial of his Level 1 appeal, he "would have checked" the disagree box, signed the form, and sent the appeal back, but he was "never afforded opportunity to do so." Dkt. 59 at 41. He claims he was not aware of this response until he received discovery of documents in this action in December 2021. *Id.* at 26. He argues that the email from Wabash Valley to the Grievance Specialist at New Castle directing the Grievance Specialist to ensure that Mr. Smith was provided a copy of his Level 1 appeal response does not indicate that the email was received, nor is it evidence that Mr. Smith actually received a copy. *Id.* at 40. Mr. Smith persuasively points out that the Grievance Specialist's affidavit in the summary judgment record does not indicate that she sent him his copy so that he could check the box indicating his disagreement and initiate his Level 2 appeal. *Id.* He attests under penalty of perjury that he never received the Level 1 appeal response. Dkt. 59 at 66. He further argues that the Grievance Specialist's affidavit does not acknowledge that the "only way an offender can get a grievance appeal form #45473, is by the facility receiving a grievance form #45471, that has to be 'properly' completed and 'accepted,' appeal is then forwarded to offender." *Id.* at 39. And, he continues, that the "only way to submit a written appeal to the Department Grievance Manager is by submitting form #45473," and an offender "cannot directly mail to that office, it has to be done by the facility." *Id.*

First, it is the defendants' burden to show that the administrative process was available to Mr. Smith. *Thomas*, 787 F.3d at 847. The Court finds there is a dispute of fact as to whether Mr. Smith was provided a copy of the response denying his Level 1 appeal after it was emailed to New Castle staff. In the light most favorable to Mr. Smith, as the nonmovant, if he did not receive this copy, and the Offender Grievance Process in fact required him to submit a Level 2 appeal as if he had received no Level 1 appeal response, there is a further dispute as to whether Mr. Smith had access to forms necessary to complete the appeals process.

An appeal must be submitted on a State Form 45473. Dkt. 49-2 at 12. But, the grievance policy does not tell an offender how to obtain State Form 45473, if it is not generated by the Level 1 appeal response, and neither does any other evidence designated by the defendants. The Supreme Court has made clear that a remedy is not available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644.[6] And the Seventh Circuit only recently held that a remedy is not available if, "because he has not been informed of the process, whether due to misconduct by prison employees, or because his personal circumstances preclude him from being able to make use of the process, it is not available to him." *Smallwood v. Williams*, --- F.4th ---, 2023 WL 1506007, at *6 (7th Cir. Feb. 3, 2023). According to the record before the Court, the grievance process required Mr. Smith to submit a Level 2 appeal on a form that it did not tell him how to obtain, and he attests he asked for appeal forms but never received any. Accepting the evidence in the light most favorable to Mr. Smith, either he was not informed of the process for obtaining an

---

[6] While some are not directly related to the incidents that are the subject of this lawsuit, as noted, the documents submitted by Mr. Smith establish that in many instances Wabash Valley employees, including the warden, thwarted his attempts to avail himself of the grievance process through "machination" and obfuscation.

11

appeal form, his efforts to attain those forms were thwarted, or the process was otherwise a dead end. *Id.*; *Ross*, 578 U.S. at 643-44.

Whether Mr. Smith exhausted his available administrative remedies regarding the claims arising from the June 13, 2019 vehicle transport cannot be resolved on the summary judgment record. Thus, this affirmative defense must be withdrawn by defendants or resolved at an evidentiary hearing under *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

**C. Vehicle Transport on June 20, 2019**

Next the Court considers whether defendants have offered sufficient evidence to demonstrate that Mr. Smith failed to exhaust his available administrative remedies regarding his June 20, 2019 vehicle transport claims. It is undisputed that Mr. Smith began efforts to informally resolve this issue. Dkt. 59 at 13. But, the record does not indicate that Mr. Smith ever filed a formal grievance consistent with the grievance policy.

First, to the extent that Mr. Smith contends that the "emergency medical grievance"[7] he filed on June 15, 2019, constitutes his attempt to formally grieve the vehicle transport that did not take place until five days later, the Court is unpersuaded. *See* dkt. 31. "The exhaustion

---

[7] Mr. Smith filed an emergency medical grievance, on June 15, 2019 that was rejected two days later because it was not "proper procedure." Dkt. 59-2 at 31. The grievance stated:

> This grievance is being filed as an emergency medical grievance. No informal complaint is filed and again this is an emergency: Due to lack of medical care and reprisal against Mr. Smith he is being housed in Ad. Seg. which is cruel and unusual punishment. Since he is housed in CCU on 6-13-19, he has taken on a trip to an outside hospital and suffered a broken clavicle. Had Mr. Smith been housed in the infirmary and receiving proper medical care then Smith would have been transported in the normal population van and not suffered this injury. He is scheduled to be transported in the near future and is afraid for his safety on that trip. He is not able to write, tie a shoe, wash the left side of his body, put on deodorant, and take care of some of his own basic needs. Staff is not giving him his necessary pain medication as follows . . . . "

*Id.* Mr. Smith sought "proper medical care, treatment, and housing." *Id.*

requirement's purpose is to alert [ ] the state to the problem and invit[e] corrective action." *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) (internal quotation omitted). The issues raised in the emergency medical grievance did not put the IDOC on notice of the conditions Mr. Smith faced during the June 20, 2019; that is, he was forced into the back of the van while nauseous, driven down the wrong side of the interstate, denied air conditioning and food, and left in the hot van.

Second, Mr. Smith's response to the motion for summary judgment and attached exhibits contain many examples of written correspondence he had with the Warden's office at Wabash Valley. For example, Mr. Smith wrote to Mr. Littlejohn to ask to speak face to face about several items, including the issue on June 20, 2019. Dkt. 59 at 11; dkt. 59-2 (June 20, 2019 letter). Other letters addressed to staff in the Warden's office sought answers to his various grievances, sought receipts for grievances, reported that the grievance office employees were not doing their job, and/or sought appeals forms if no responses or receipts for various grievances would be issued. *See, e.g.*, dkt. 59 at 13, dkt. 59-2 at 35 (June 30, 2019 letter to Superintendent: "Again, I'm writing because the grievance department is not answering my grievances or issue a receipt for receiving grievances . . . . Again please intervene and have your staff do their jobs properly."). Mr. Smith's correspondence indicates he enclosed an informal complaint about the June 20, 2019 trip and a "grievance with one (1) attached page"[8] to the Superintendent because his "staff is not doing their job," and requested that his letter be answered. Dkt. 59-2 at 38. This correspondence is evidence

---

[8] At docket 59-2 at 40, Mr. Smith included a handwritten grievance addressed to the facility Grievance Specialist dated July 7, 2019, with a "cc" to the Warden, that discusses the events of the June 20, 2019 transport. This does not appear to be on the required formal grievance State Form 45471, nor does it appear to have been received or stamped by the grievance office. *Id.* Rather, it appears it was included with Mr. Smith's correspondence to the Warden's office.

that Mr. Smith's attempts to strictly comply with the Offender Grievance Process by appropriately submitting a formal grievance to the Grievance Specialist were unsuccessful.

Moreover, accepting the record in the light most favorable to Mr. Smith, after he properly submitted a grievance about the June 20, 2019 incident to the Grievance Specialist and did not receive a receipt for that grievance as he claims, he notified the Grievance Specialist of his failure to receive a receipt for the grievance. *See* dkt. 49-2; *see, e.g.*, dkt. 59 at 13, dkt. 59-2 at 35 (June 30, 2019 letter to Superintendent: "Again, I'm writing because the grievance department is not answering my grievances or issue a receipt for receiving grievances . . . . Again please intervene and have your staff do their jobs properly."). A reasonable fact finder could conclude that Mr. Smith was stymied in his attempts to use the formal system and thus attempted other means of attracting attention. *Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828, 833–34 (7th Cir. 2020) ("Although a prisoner must take all the steps the prison offers, and do so properly, this does not mean that the inmate must go beyond the established system and guess at some other way of attracting the attention of the prison authorities." (internal citations omitted).

Mr. Smith's persistence in complaining that the grievance department was not answering his grievances or issuing a receipt for receiving grievances suggests that the grievance process was not available. Accordingly, summary judgment is not warranted.

### V. Conclusion and Further Proceedings

As set forth above, the defendants' motion for summary judgment on exhaustion, dkt. [49], is **DENIED.** There are material facts in dispute regarding the availability of the grievance process that cannot be resolved on summary judgment and must instead by resolved at a *Pavey* hearing. The defendants shall have **through April 13, 2023,** to notify the Court whether they wish to withdraw their affirmative defense or proceed to a *Pavey* hearing.

**IT IS SO ORDERED.**

Date: 3/23/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

KEVIN SMITH
160176
MIAMI - CF
MIAMI CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com